Filed 3/18/25  P. v. Stewart CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KARL FRANKLIN STEWART,<br><br>    Defendant and Appellant. | B332213<br>(Los Angeles County<br> Super. Ct. No. BA144475) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In 1999, defendant Karl Franklin Stewart (Stewart) was convicted of special circumstance murder, attempted robbery, and burglary. In 2022, Stewart filed a petition for resentencing under Penal Code section 1170.95 (1172.6).[1] The trial court denied Stewart's petition at the prima facie stage, finding he was ineligible for resentencing as a matter of law because the record of conviction established he was convicted as the actual killer. Stewart appeals the denial of his petition for resentencing, arguing the jury instructions given at his trial do not conclusively foreclose the possibility that he was convicted under a now-invalid theory of felony murder. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Enid Whittlesey (Whittlesey) was murdered in her home. Her body was discovered on her bed with "massive injuries" to her face and throat as well as multiple stab wounds to different areas of her body.[2] The police found a footprint on top of a piano beneath an open front window of Whittlesey's home. The murder remained unsolved for several years. In 1996, a detective in the Los Angeles Police Department ran a fingerprint recovered from the crime scene through the Automated Fingerprint Identification System. The system returned a match for Stewart.

---

[1] All further unspecified statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). For ease of reference, we will refer to the section by its new numbering only.

[2] We take these facts from the opinion in Stewart's prior appeal. (*People v. Stewart* (Feb. 23, 2001, B134541) [nonpub. opn.].) We cite the facts not for their truth, but only for the basis of Stewart's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)

Stewart was arrested and interviewed by the police. During the interview, Stewart made several statements. At first, he denied ever entering Whittlesey's residence. Later, he admitted he went inside the home but claimed he did so because he heard someone screaming inside as he walked down the street. Stewart claimed he cut his finger on a glass or aluminum soda can after entering the house. He then saw Whittlesey at the top of the stairs, who screamed at him and told him to leave. In response, Stewart ran out of the house.

Stewart's story changed over time. Later in the interview, Stewart admitted he touched Whittlesey's hand before noticing blood on her hands and running out of the house. Stewart's story then changed again, and he claimed Whittlesey was armed with a butcher knife and had swung at him with it. Stewart claimed he grabbed Whittlesey's wrists and pushed her down to try to restrain her because she was hysterical.

Later, Stewart speculated that someone else must have broken into the home to rob Whittlesey, only to be scared away before Stewart entered the home. Stewart claimed Whittlesey must have attacked him because she thought he was the intruder from before. Stewart said Whittlesey cut him with the butcher knife, and in response he grabbed her and pushed her back. Stewart initially said Whittlesey was standing when he left, but later he said she was on the bed when he departed. Stewart also said he had been drinking that day and was under the influence of alcohol when he entered the home. He maintained that he did not enter the house to rob Whittlesey and did not intend to hurt her.

In 1997, an information was filed charging Stewart with special circumstance murder (§§ 187, subd. (a) & 190.2, subd. (a)(17); count 1), robbery (§ 211; count 2), and burglary (§ 459; count 3). The information

alleged as to each count that Stewart personally used a deadly and dangerous weapon, a knife, to commit the offenses (§ 12022, subd. (b)).

I.    *Trial*

At trial, the prosecution played an edited version of Stewart's recorded police interview for the jury.  The prosecution offered evidence matching Stewart's DNA and fingerprint to samples taken from the crime scene.  The prosecution also put forth evidence that Whittlesey, who was 80 years old at the time of her death, was a private and fearful person who never left her windows or doors open.  She was also reluctant to allow anyone in her house, including her relatives.  In his defense, Stewart called an expert to testify that testing showed he had diminished intelligence.

The prosecution began closing argument by identifying Stewart as the one who killed Whittlesey. "I want to start off with making one statement, and that statement is this: there is a killer, a murderer in this room right now.  [¶]  . . . .  That killer is right here, and his name is Karl Stewart." Throughout the argument, the prosecutor reiterated that Stewart was the one who hit, stabbed, and killed Whittlesey.

Stewart's counsel argued that, while Stewart was present in Whittlesey's house, he didn't rob her or burglarize her home.  Counsel argued that absent a robbery or burglary, "there cannot be special circumstances in this case," leaving premeditated first-degree murder as the only basis to convict Stewart of murder.  Counsel also pointed to Stewart's statement that "he had been drinking and that he was under the influence" at the time he was in Whittlesey's house.  Counsel argued that given his  intoxication and Stewart's statements to police that he "never meant to hurt this lady,"

Stewart did not have the requisite intent to be convicted of premeditated murder.

The prosecution's rebuttal argument made it clear that Stewart was the actual killer under either theory of murder. "He killed Enid Whittlesey; the only issue is the degree. . . . [¶] So if you start at that point, that the defendant was the killer, then you have to decide was it during a robbery or a burglary. And if the answer is yes, then you find him guilty of first-degree murder on the felony murder theory, which is the law in the state. [¶] Alternatively, if you find he is the killer, then you have to decide whether there's premeditation and deliberation." The prosecution also argued, "There were only two people in the house, Enid Whittlesey and Karl Stewart. And the physical evidence and the photographs and the blood trail and fingerprint clearly show that he's the killer." "He told you that he was in there alone."

The jury was instructed with CALJIC No. 8.10[3] (first-degree murder), CALJIC No. 8.20[4] (premeditated murder), and CALJIC No. 8.21[5] (felony murder), among other CALJIC instructions.

---

[3] CALJIC No. 8.10 provided, in pertinent part, that "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of the crime of robbery or during the commission or attempted commission of the crime of burglary, is guilty of the crime of murder."

[4] As relevant here, CALJIC No. 8.20 instructed the jury that "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree."

[5] CALJIC No. 8.21 instructed the jury that "The unlawful killing of a human being . . . which occurs during the commission or attempted commission of the crime of robbery and/or . . . burglary, is murder of the first degree when the perpetrator had the specific intent to commit that crime."

II.    *Verdict and Sentencing*

The jury convicted Stewart of first-degree murder on count 1, attempted robbery on count 2, and first-degree burglary on count 3. In each count, the jury found true the allegation that Stewart personally used a deadly weapon. On count 1, the jury also found true the special circumstance allegations that Stewart committed the murder while engaged in the commission of a burglary and an attempted robbery. Stewart was sentenced to life without the possibility of parole, plus one year for the deadly weapon enhancement under section 12022, subdivision (b).[6] On direct appeal, this court affirmed Stewart's conviction in an unpublished opinion.

III.   *Petition for Resentencing*

On August 22, 2022, Stewart filed a petition for resentencing under section 1172.6. The court appointed counsel for Stewart and set a briefing schedule on his petition. The District Attorney opposed the petition, arguing that while the jury was instructed on felony murder, Stewart was convicted as the actual killer and was ineligible for relief under section 1172.6. The opposition attached copies of the jury instructions and verdict forms, as well as a transcript of the prosecution's closing argument. Stewart filed a response arguing that the jury instructions and verdict did not foreclose the possibility that the jury convicted Stewart under the felony-murder rule without necessarily finding he was the one who personally killed Whittlesey.

The trial court denied Stewart's petition on July 6, 2023. The court noted it had reviewed several documents, including the verdict forms,

---

[6]    Stewart's sentence was imposed on count 1 for first-degree murder. Stewart was also sentenced on counts 2 and 3, but those sentences were stayed under section 654.

transcript of the prosecution's closing argument, jury instructions, the charging information, the preliminary hearing transcript, and the opinion from Stewart's direct appeal.[7] The court correctly stated that "Felony murder, where the defendant is the actual killer, remains a valid basis for murder liability." The court determined, "The verdict forms and jury instructions show, as a matter of law, that Petitioner manifested an intent to kill or personally killed the victim during an attempted robbery or burglary." The court concluded, "the record shows that [Stewart] was not convicted of murder based upon a now disallowed theory."

Stewart timely appealed the denial of his petition for resentencing.

## DISCUSSION

I.     *Legal Standards*

""""Under the felony-murder doctrine as it existed at the time of [Stewart's] trial, 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' [Citation.] Murders occurring during certain violent or serious felonies[, including robbery and burglary,] were of the first degree, while all others were of the second degree. [Citations.]" [Citation.]' [Citation.]" (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1199.)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (SB 1437) to ensure a defendant's sentence is commensurate with their

---

[7]     While the court's ruling recited facts from the 2001 appellate opinion, the court stated it "understands it may not make any findings of fact at this stage of the proceedings."

7

individual criminal culpability. (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) To accomplish this goal, SB 1437 amended the felony-murder rule by adding section 189, subdivision (e). Under subdivision (e), a defendant may only be found guilty under the felony-murder rule if the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (*id.*, subd. (e)(2)); or a major participant in certain underlying felonies who acted with reckless indifference to human life. (§ 189, subd. (e)(3); *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*); *People v. Garcia* (2022) 82 Cal.App.5th 956, 965.)

SB 1437 also created a procedure, codified at section 1172.6, which allows persons convicted of murder to file a petition for resentencing if they could no longer be convicted under the law as amended by SB 1437 and Senate Bill No. 775. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile* (2020) 10 Cal.5th 830, 847.) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) The bar for this prima facie showing was "'intentionally and correctly set very low.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) In conducting its prima facie review, the trial court may not engage in fact-finding involving the weighing of evidence or credibility determinations and must assume the truth of all facts stated in the petition. (*Id.* at pp. 971–972; *People v. Flint* (2022) 75 Cal.App.5th 607, 612.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief as a matter of law. "'[I]f the record, including the court's own documents, 'contain[s] facts refuting the

allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,'"" thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*); see *Curiel, supra*, 15 Cal.5th at p. 460; *Lewis, supra*, 11 Cal.5th at p. 971.) We review de novo whether the trial court properly denied Stewart's petition without issuing an order to show cause. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

II.     *Stewart is Ineligible for Resentencing under Section 1172.6*

Stewart argues the jury instructions and verdict forms do not foreclose the possibility that he was convicted of murder under a theory of felony murder that was rendered invalid by SB 1437. In determining whether the jury instructions left open the possibility that Stewart was convicted on a now-invalid theory, "it may be helpful, although certainly not dispositive, to start with instructions the jury was *not* given." (*Harden, supra*, 81 Cal.App.5th at p. 53.)

At Stewart's trial, the court did not instruct the jury on the natural and probable consequences doctrine, aiding and abetting, or any other theory of derivative liability. For example, Stewart's "jury was not provided with CALJIC No. 2.11.5, which instructs that '[t]here has been evidence . . . indicating that a person other than [the] defendant . . . may have been involved in the crime[s] for which that defendant is on trial,' but admonishes the jury not to speculate why that other person is not on trial with the defendant." (*People v. Love* (2025) 107 Cal.App.5th 1280, 1285, fn. 4.) Stewart's jury was also not instructed with former CALJIC No. 8.27 on "first degree felony murder for a killing by another." (*People v. Hin* (2025) 17 Cal.5th 401, 442.)

9

Where a defendant's jury "was instructed on felony murder, but not on the natural and probable consequences doctrine," the "only possible basis for section [1172.6] relief is if at least one juror convicted [the defendant] of felony murder on a theory other than being the actual killer." (*Harden*, *supra*, 81 Cal.App.5th at p. 53.) Stewart argues the jury instructions left open the possibility that he was not convicted as the actual killer. We are not persuaded.

At Stewart's trial, the court used CALJIC No. 8.10 to define first-degree murder for the jury. Under CALJIC No. 8.10, "Every person who unlawfully kills a human being" with malice or during the commission of a robbery or battery "is guilty of the crime of murder." "'This language on its face tells the jury that "the person who unlawfully kills" is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury.' [Citation.] The jury was instructed on no alternative definition of murder. Thus, [defendant's] murder conviction necessarily means the jury determined []he actually killed [the victim]." (*Harden*, *supra*, 81 Cal.App.5th at p. 55 [holding defendant was ineligible for relief under § 1172.6 where the jury was instructed with CALJIC Nos. 8.10, 8.20, and 8.21].)

On appeal, Stewart ignores CALJIC No. 8.10 and instead focuses solely on the language of CALJIC No. 8.21. CALJIC No. 8.21 instructed the jury in pertinent part that "The unlawful killing of a human being . . . which occurs during the commission or attempted commission" of a robbery or burglary "is murder." Stewart argues that the phrase "unlawful killing" in the context of CALJIC No. 8.21 "does not necessarily mean 'personally kills'" and, therefore, the instruction permitted the jury to find him guilty of murder without necessarily finding that he was the actual killer.

10

We cannot accept Stewart's invitation to read CALJIC No. 8.21 in isolation. Instead, we "'must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way.'" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1255–1256.) Given the express language of CALJIC No. 8.10 discussed above, we find Stewart's proffered interpretation of No. 8.21 unpersuasive when the two instructions are read together.[8] (See *Harden, supra*, 81 Cal.App.5th at pp. 48, 54 [concluding "no juror could have voted to convict [defendant] as anything other than being the actual killer" where jury was instructed with CALJIC Nos. 8.10 and 8.21].)

The same result would follow even if we were to find some inherent conflict or ambiguity between CALJIC Nos. 8.10 and 8.21. "If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction." (*People v. Smithey* (1999) 20 Cal.4th 936, 983, 963.) In particular, we "must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

On appeal, the Attorney General points to the closing arguments to establish Stewart is ineligible for relief under section 1172.6. We agree the closing arguments establish that Stewart "was prosecuted solely on the theory he was the actual killer and committed the [attempted] robbery [and

---

[8]     Stewart also relies on *People v. Lopez* (2022) 78 Cal.App.5th 1 (*Lopez*) as supporting his interpretation of CALJIC No. 8.21. *Lopez* is distinguishable as it involved CALCRIM instructions that were materially different than the CALJIC instructions given in Stewart's trial. (*Harden, supra*, 81 Cal.App.5th at pp. 57–58 [distinguishing CALCRIM instructions at issue in *Lopez* from CALJIC Nos. 8.10 and 8.21].) The jury instructions given in Stewart's trial did not provide a similar path to convict him without finding he was the actual killer. (*Ibid.*)

11

burglary] alone." (*Harden*, *supra*, 81 Cal.App.5th at p. 57.) It is undisputed that the only theory of the crime put forth by the prosecution during the closing arguments was that Stewart, acting alone, was the actual killer. The prosecution repeatedly argued to the jury that Stewart was the one who killed Whittlesey, expressly stating that Stewart personally stabbed Whittlesey. Additionally, the prosecution pointed to Stewart's own statements to police that he was alone in the house with Whittlesey.

Stewart offers no rebuttal to the closing arguments other than to claim in conclusory fashion that the Attorney General "relies on the prosecutor's closing argument . . . and the entire appellate record from the trial . . . to establish that appellant was the actual killer. [The Attorney General] asks this court to weigh the evidence presented in the trial transcript, which is impermissible at the prima facie stage." Stewart offers no explanation as to how consideration of closing arguments involves weighing evidence or credibility. As the trial court instructed the jury in this case, "Statements made by attorneys during the trial are not evidence."

Stewart's argument is also belied by several cases that have expressly held that closing arguments are part of the record of conviction that may be considered at the prima facie stage of a section 1172.6 resentencing petition. (See *People v. Ervin* (2021) 72 Cal.App.5th 90, 106; *Lopez, supra,* 78 Cal.App.5th at p. 13 ["The record of conviction may include the underlying facts as presented in an appellate opinion, the trial evidence, the jury instructions, and closing arguments of counsel"]; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935 [record of conviction includes "the charging document, verdict forms, closing arguments, and jury instructions"]; *Harden, supra,* 81 Cal.App.5th at p. 56.) We may consider closing arguments in determining whether Stewart established a prima facie case for resentencing relief under

section 1172.6. In doing so, we do not engage in any fact-finding or weighing of evidence. Instead, we consider the closing arguments only to determine the theories of liability presented to the jury.

By ignoring the substance of the closing arguments, Stewart impliedly concedes that they establish he was tried and convicted as the actual killer.[9] (*People v. Bouzas* (1991) 53 Cal.3d 467, 480 [argument is conceded by failure to address it on appeal]; *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [party "effectively concedes" issue by failing to address it in brief]; *Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1424 [appellants "impliedly concede" an issue by failing to address it]; *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 566 ["By failing to argue the contrary, plaintiffs concede this issue"].) Even if Stewart had not conceded the point, we find the closing arguments and jury instructions, when read together, foreclosed the possibility that Stewart was convicted as anything other than the actual killer.

Below, Stewart did not identify any theory of the case or facts that suggest that he was an accomplice or otherwise convicted on a theory of vicarious liability for a killing done by someone else. There was no argument or instructions on holding Stewart derivatively liable for a killing committed by someone else. On appeal, Stewart simply ignores the undisputed portions of the record of conviction that establish he was convicted as the actual killer. As it is undisputed that Stewart was the only participant in the killing of Whittlesey, he is ineligible for resentencing relief under section 1172.6. (See

---

[9] It is immaterial that the trial court did not expressly rely on the closing arguments in denying Stewart's petition. "[W]e review results and not reasoning." (*Travis v. Brand* (2023) 91 Cal.App.5th 996, 1006.)

generally *People v. Delgadillo* (2022) 14 Cal.5th 216, 233, citing § 1172.6, subd. (a) [where the defendant was the "only participant in the killing," he was not convicted under an invalid theory and could not have made a prima facie showing of relief].)  On this record, the trial court properly denied Stewart's section 1172.6 petition at the prima facie stage without an evidentiary hearing.

## DISPOSITION

The order denying Stewart's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


COLLINS, J.


DAUM, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.